Brian Burns for the Deutsche Bank Defendant's Appellees, BURNS. Kevin O'Reilly, capital O-R-E-I-L-L-Y on behalf of David Parse Appellee. Very well. We are this morning allotting 15-15 with some opportunity for rebuttal if you would like to reserve. Yes. Very well. And I assume you are sharing. Correct. Parsing out. So still the same time frame. You may share it or break it in the manner in which you deem appropriate. And so if you are ready, we will proceed with Mr. Hissel. Thank you. Is the third guy wanting, have we seen yet a third guy here wanting to participate? Or is this just a solemn observer? No, I saw him quickly turn to say something, so I was just wondering if he wanted additional time or something. Very well. Okay. All right. Not often you ask a lawyer if they want to talk. Yeah, right. It was a mistake. Good morning, Your Honors. My name is, as I said, Scott Hissel. I represent the plaintiff appellants in this matter. And thank you for scheduling this matter for oral argument. As I'm sure the court is aware, the trial court in Rome dismissed the case with prejudice against the plaintiffs, principally on the basis of standing. And we, as we said both in our briefs, contend that that was error. The purpose of a standing document generally has been repeatedly established in the case law, is to preclude persons who have no interest in the controversy from bringing lawsuits. That's the general outline of the doctrine of standing. And in this case, there is no conceivable way that one could construe the amended complaint that was dismissed as a derivative action, or one which the individual plaintiffs, individual taxpayers who entered into the transaction to reduce their tax liability on their personal tax returns, have no vested interest in the outcome of this litigation. Counsel, I thought that the record supported the conclusion that it was not the individuals who, in fact, entered into the agreement, but in fact, each of the several LLCs were the signatures on the agreement. Thank you, Judge Cobbs, for that. The further currency transactions which resulted in a trade confirmation with Deutsche Bank were the end of the sequence of marketing and implementation of these what are called so-called son-of-boss or tax shelter transactions. Before they ever entered into the contracts, they had been marketed and contacted by Jenkins & Gilchrist, the law firm, as well as Deutsche Bank brokers about how the transactions work, why they worked from a tax standpoint, and what the sequence would happen from there. The complaint alleges a contract claim solely on behalf of the LLC plaintiffs and the partnership plaintiffs. But it otherwise alleged tort claims which preceded the entry of the contract with Deutsche Bank. They allege aiding and abetting, conspiracy, and fraud claims, which say that the individual plaintiffs were induced into the tax shelter transaction because they were told that it worked. What would be the limitations, period, on those salesmanship misrepresentations that you talked about? Yeah, and obviously that's an argument that's raised by the defendants as an alternate basis for this court to affirm. We acknowledge that the tort claims on behalf of the individual plaintiffs, as well as the LLCs and partnerships, are subject to five-year statutes of limitations. Before the trial court, we briefed and re-briefed the statute of limitations issues, and we contend that Deutsche Bank, for years after the transactions were entered into, made public and press statements to Congress that all they did was execute trades. Then, in December of 2010, lo and behold, Deutsche Bank enters into a deformed prosecution agreement with the Department of Justice and IRS, where it acknowledges that, in fact, they did not just execute arms-length, one-of-a-mill trades. They knew that the transactions that they were entering into were illegal tax shelter transactions, and they went forward with those transactions anyway. So we contend and allege, and then the trial court found that we had sufficiently alleged, that the tort claims were subject to fraudulent concealment, and that the claims were brought within five years of when Deutsche Bank actually finally came clean and acknowledged their involvement in what can only be construed as a widespread conspiracy. In the deformed prosecution agreement with the government, Deutsche Bank acknowledges that, for the first time, they had unlawfully, willfully, and knowingly participated in over 1,300 illegal tax shelters, marketed to over 2,100 customers. So your data gives the misrepresentation made to your clients individually. Yes. And they were served with a notice of deficiency, and at that point, didn't they know at that point that these representations were wrong? They were put on notice that the statute of limitations just started running at that point? Yeah, and obviously, we were not the first case in Illinois to address these issues, and I think what you're alluding to is the Kahn case from Illinois Supreme Court. And the issue that is addressed in Kahn is, at what point in time do plaintiffs in my client's circumstances know that they've been injured? And in Kahn, they argue that the plaintiff there filed their claims within three years of the notice of deficiency that was addressed to them. Deutsche Bank, in that case, and the other defendants, argued that the date should be some day earlier than the notice of deficiency. Ultimately, the Supreme Court says, well, when you get a notice of deficiency, you have been injured because the IRS has rejected that transaction. The question of when they were injured and whether they should have known to sue Deutsche Bank can be counteracted by the doctrine of fraudulent concealment, which is an enumerated statutory basis to toll the statute of limitations in circumstances where the defendant conceals the cause of action from you. In the complaint, we alleged, and the trial court found we had alleged enough to put the defendants on notice and to warrant further discovery, that Deutsche Bank expressly said that they did nothing wrong after the transactions were entered into. They went to the press. They went to Congress and said, all we did is execute trades. We didn't know these were illegal tax shelters. And it wasn't until the 2010 deferred prosecution agreement with the government that that was laid to be a lie. And so our clients put in affidavits before the trial court that said that until 2013, they were unaware of the facts related to the claims against Deutsche Bank, and the trial court found that those are questions of fact which should be allowed to proceed through discovery as to the toll claims. As to the contract claims, obviously that's a 10-year statute of limitation, and there there's no dispute that the claims were brought within 10 years of when the notices of deficiency were issued to any of the clients. Well, but with the contract claims, don't we run almost entirely into this entire standing issue, though? I mean, it sounds to me you're arguing that the tort claim can be saved because it was timely filed. But with respect to that contract claim, then we get into the whole issue with respect to who signed and the LLC and the assignment of all of those. Yeah, and there I just think that when you read the defendant's briefs, or at least when I read the defendant's briefs, as well as the trial court's ruling, this reads like a con game of three-card Monty. No matter what card we turn over, it's not the right card. No matter what show we turn over, the ball's not underneath. For the individual plaintiffs, they point to the contract and the corporate entities. For the corporate entities, they say, oh, well, we, the defendants, who structured the transaction with Jenkins and Gilchrist in this way, because this is how we told you it needed to work in order to implement the tax shelter. You have to create an LLC. You have to then assign the partnership the position that the LLC has purchased, and then the partnership has to liquidate. So the answer to your question on that is that it has to be that either the LLC or the partnership has residual breach of contract claims. And the reason for that is, as to the LLC, the LLC assigned its position as to future performance under the currency swap transaction to the partnership, as had been requested and designed by Deutsche Bank and its co-conspirator Jenkins and Gilchrist. So as to any breach that had already occurred under the contract, and in this case we claim that the breach was, that the contract said that everything Deutsche Bank was doing was legal and legitimate under applicable law, that breach already existed. And it was not assigned as part of the assignment agreement for future performance to the partnership. So the LLC is the appropriate claim for prior breaches. If you construed the assignment agreement to mean that everything related to the trade confirmation was assigned to the partnership, then the fact that the partnership tolerated its position does not foreclose the partnership from now bringing the claim. And the reason for that is fairly straightforward, I think. Under applicable partnership law, and it's the classic hotels case and the how case are the two cases that actually, in this situation, the parties largely agree what the lay of the law is as to standing. The question is just the complaint alleges contrary to what we contend that the trial court found. As to the partnership, as to a partnership, a partnership generally exists until such time as all of its assets or liabilities have been resolved. When the partnership terminated at the time of the transaction, it only had one asset that it knew of. That asset was the position that it had entered into with Deutsche Bank. Later, it discovers that it actually has other assets, namely the claims in this lawsuit. And so the question is, as a matter of law, a partnership doesn't cease to exist or wind down until all of its assets and liabilities have been addressed. If it later discovers a claim, so long as the partners are not in dispute with one another, there's some other rationale for why the partnership should go away than the partnership has the claim to pursue. What documents did you present to the trial court to support the conclusion that the partnership was not dissolved? So the evidence that we cite in the brief and that we suggest means that this is at the very least an issue of fact that needs to be disputed were severalfold. First is just the language of the assignment. I mean, the language of the termination agreements is stating a proposition of law. The proposition of law is the position is done, so the partnership is terminated. But that position arguably came along with some claims that they didn't then know about. So that's just a matter of interpreting the contract. The evidence that was presented was that Deutsche Bank itself, after the supposed termination of the partnerships, continued to interface with the partnerships. In fact, it backdated the foreign currency transaction positions. But that would be Deutsche Bank, not the partnership itself. So how can activity or any conduct on behalf of Deutsche Bank? I see. So I think there, from my perspective, is that Deutsche Bank did not act as if the partnerships were terminated and could no longer proceed any further because it itself was dealing with the partnerships after the supposed termination. The other evidence that we advanced was the tax court cases because each of these individual plaintiffs was subject to a notice of actually what's called an FPA, which is a Partnership Notice of Deficiency by the IRS. And that partnership then became subject to litigation with the IRS, which in some cases became an active case where the partnerships were parties, and in other cases were parties to settlement agreements with the IRS to resolve the liabilities associated with the transactions that we claim Deutsche Bank got us invested in. So the activities continued because there were still liabilities to be dealt with. And the major liability is the one that prompted this litigation, which is the IRS came along, they imposed penalties, and they imposed additional costs and damages. Those were principally borne by the individual plaintiffs, but the partnership itself, because it was a flow through all of these entities, the LLCs and the partnerships were... So you acknowledge that it is a flow through. It's a flow through as to the tax consequences of this whole scheme. The transaction originates with individual taxpayers who have otherwise created gains. So you might want to try and conclude your argument. Yeah. At the end of the day, the procedural posture of this case comes, to your honors, on a 2619-2615. Well, you've not argued 2615. 2619 was the standing and statute of limitations position. The allegations in the complaint clearly allege that the individual plaintiffs are the ones who principally suffer damage here. For that reason alone, the standing ruling as to them must be reversed and is there. As to whether the statute of limitations might later bar their claim, I would just suggest that this court should take that issue up after the plaintiffs have had the opportunity to have the discovery that the trial court thought appropriate. If it doesn't establish fraudulent concealment, you'll have the benefit of the full record. If it does, then the claims are timely and we will move forward. Thank you, your honors. Thank you, Mr. Song. Good morning, your honors. I'm Brian Burns on behalf of the Deutsche Bank Defendant Appellees. I want to start with the individual or shareholder plaintiff standing argument. To support their argument, the plaintiff shareholders have represented to this court that they, quote, paid defendants for their advice and guidance. And based on those purported individual payments, they are claiming that they have standing in their individual capacities. But that's a false premise. The only payments that Deutsche Bank received from the plaintiffs were for the FX digital options transactions. And as Judge Cobbs pointed out, those transactions were not entered into by the shareholders in their individual capacities. They were entered into by the LLC plaintiffs. That's shown by the trade conference that plaintiffs attached as Exhibit A to their second amended complaint. It's unambiguous and clear. Additionally, the LLC plaintiffs are the ones who paid Deutsche Bank the fees for those transactions. That's shown by the assignment agreement that plaintiffs attached to their second amended complaint as Exhibit D. So to be sure, the individuals were involved acting on behalf of the LLCs when they made those payments, but they were acting in their capacity as agents. They were never acting in their individual capacities with respect to their relationship with Deutsche Bank. The shareholder plaintiffs also argue in favor of individual standing that they entered into the digital options transactions through the LLC plaintiffs. But that does not establish a ground for an individual claim. Under Illinois law, like the law of any other state, a corporation is treated as an entity that is separate from its shareholders. That's the perfection carpet case that we cited, recognizing that shareholders cannot step into the shoes of a corporation to assert claims in their individual capacities. The individual shareholders here obviously had considerable wealth, and they were able to deplore a number of corporations when they were trying to eliminate their tax liability. But along with the benefits of the corporate form, they have to accept the burdens of the form, and they cannot simply cast aside the corporate form when it's inconvenient for them. Now, we heard from counsel earlier this morning that plaintiffs suffered a separate and distinct injury in the form of the tax penalties that they had to pay. But those allegations cannot save the claims of the shareholder plaintiffs. This is demonstrated by the Alpha School Bus case that we cited. Alpha School Bus was a case like this case, where a corporation and a shareholder each asserted claims against a defendant. This court upheld the dismissal of the shareholder's claims for trade secret infringement because the shareholder failed to show that there had been any infringements of the shareholder's trade secrets. The only infringement had been infringement of the corporation's trade secrets. So that's the same situation that we have here. Because the individual plaintiffs cannot show that they suffered any harm as individuals, they failed to make out a claim in their individual capacity. Can you address Mr. Hassell's tort claim? Address his tort claim with respect to the misrepresentation as it relates to the individual plaintiffs? Well, I will tell you, I appreciate that on appeal, there have been arguments that, for example, we heard this morning that, I believe I scribbled this down correctly, the individuals were fraudulently induced by Deutsche Bank because they were told that the scheme worked. And there are other representations that have been made suggesting that Deutsche Bank's fraud purportedly was defrauding them into forming limited liability companies and defrauding them into forming partnerships. That's not what is alleged in the second amended complaint, nor is it what the trial judge ruled on. In fact, if we turn to the second amended complaint, for example, if we take the fraud claim, that appears in paragraphs 128 through 139 of the second amended complaint. And in that claim, there's a fraudulent inducement claim that's made by all plaintiffs. And the plaintiffs allege that Deutsche Bank made numerous knowingly false affirmative representations to induce plaintiffs to pay millions of dollars in fees. They also allege that the plaintiffs would not have agreed to invest if they had known that defendants' representations were false. So the purported fraudulent inducement was to induce the plaintiffs to pay fees. Now, as I was discussing earlier, these fees were paid by the LLC plaintiffs alone. So the LLC plaintiffs would have standing to assert that claim. The individuals do not have standing to assert that claim because they were acting in a representative rather than an individual capacity. And if you look through the second amended complaint and you look at all of the allegations, you will never find any allegation suggesting that the wrongdoing by Deutsche Bank was to induce them into entering into forming limited liability companies and forming partnerships. That's simply not the claim that the trial court addressed, and it's inappropriate for plaintiffs to discharacterize what their allegations are at this stage. In their reply brief on appeal, plaintiffs cite a number of new cases that they never cited before the trial court. These are what plaintiffs call the Alice in Wonderland cases, which purportedly show that what the trial court was doing was surreal. But these cases do not support in any way plaintiffs' new theory that they can disregard the corporate form at their convenience. For example, at the very first paragraph of their reply brief, they cite the Branding case from the Seventh Circuit. The Branding case does not articulate any rule about shareholders disregarding the corporate form. Rather, it addresses whether a corporation can have a successor if it has not yet been dissolved, a rule of law that has nothing to do with this case here. Similarly with the Merit Management case, that's another case that they cite. That case addresses whether a bankruptcy trustee can invalidate certain kinds of transfers. One other case I just want to address briefly is the Mann case from this court. Mann is a case where individuals invested in a mutual fund, and then they alleged that the manager of the mutual fund, Kemper, had made misrepresentations to them, and they brought this claim in their individual capacity. What's different about Mann from this case is in Mann, the plaintiffs paid out of pocket. They had a more straightforward transaction. Representations were made to them by Kemper, and then they paid the money themselves. Here, as we've discussed, the individuals paid nothing in their individual capacity. Rather, what they did was they formed the LLCs, and the LLCs entered into that transaction. So the court in Mann recognizes that the individual can bring the claim because the mutual fund would not have any such claim. That's not the case here, because here, the limited liability companies, in fact, do have those claims, and they've asserted them in the second amended complaint. Let me just turn to the untimeliness issue. Plaintiffs here are asking this court to overrule the opinion of the Illinois Supreme Court in Kahn, to overrule the decision of this court in Lane, and to overrule the recent McMahon decision by Judge Coleman of the Northern District of Illinois. Now, all of these cases are exactly analogous to the situation that we have here. They all involve taxpayers who are alleged damages that are related to tax penalties that they had to pay. And in Kahn, the court addressed the approval rule and the discovery rule, and it found that the discovery rule was what triggered the statute of limitations in these circumstances. And the discovery rule is when a plaintiff knows or reasonably should know of the injury and knows or reasonably should know that it was wrongfully caused. In this specific context, the Kahn court held that for these taxpayers, the discovery rule is satisfied at the latest by the time that the taxpayer receives a notice of deficiency or agrees to pay tax penalties. At that point, the taxpayer is on notice that he may have been wrongfully injured, and he has an obligation not to sit on his rights but to investigate. In Lane and McMahon, which was subsequent to Kahn, the court held that a plaintiff may have sufficient notice that it has been injured, that it should know of an injury and should know that the injury was wrongfully caused before it receives a notice of deficiency. In the case of Lane, a couple years before the notice of deficiency was issued, the plaintiff was on notice that his former tax advisor entered a criminal plea. So that triggered it at an earlier time. In the case of McMahon, before the taxpayer received a notice of deficiency, he was on notice from his accountants and his attorneys that there were serious problems with his tax plan. So here, the plaintiffs are urging you to find that the statute of limitations does not begin to run until December of 2005. Now, the undisputed evidence, which we submitted to the trial court, shows that each individual plaintiff received a notice of deficiency or agreed to pay tax penalties by no later than January 2006. So by arguing for a later date, the plaintiffs are urging you to overturn Kahn, and they don't give any reason for it. They try to justify moving the date past the notice of deficiency based on their fraudulent concealment allegations. The problem with that argument is in Kahn and in Lane, there were also fraudulent concealment allegations. In fact, in Lane, paragraph 26 of Lane, the court expressly addressed the fraudulent concealment allegations and held that because the individual taxpayer was put on notice based on these other events, it didn't matter that the individual plaintiffs were arguing that there had been fraudulent concealment. So that does not help them here at all. And one other point I'd like to raise. Repeatedly in their brief, the individual plaintiffs are arguing that even if they're wrong about Kahn, their claims are still timely because supposedly they have the benefit of a 10-year statute of limitations. There's a very basic problem with this claim. If you charge the second amended complaint, count one of the second amended complaint, that claim is asserted against, excuse me, is asserted by the LLC plaintiffs, Channel Lumber Co., and the partnership plaintiffs against Deutsche Bank. Conspicuously missing are the individuals, which is not a surprise because the individuals never signed any contract with Deutsche Bank, so therefore they don't have a contract claim, nor do they have the benefit of the 10-year limitations period. Let me just turn briefly. There was some discussion about the claims against the LLC. We're not reserving time for co-counsel. I'm sorry. Do you want to go now? You might want to wrap up. Okay. Let me just say, with regard to the claims of the LLC plaintiffs, if you look at the assignment agreement, which is attached to the second amended complaint, there is an unrestricted assignment of all rights. So there's no basis to claim that the LLC's retained any of their rights. In fact, that conclusion is reiterated by the second amended complaint itself, which flat out recognizes that the LLC plaintiffs assigned their rights to the partnership plaintiffs. And just quickly, with regard to the partnership plaintiffs, the evidence that was presented to the trial court were the termination agreements and liquidation agreements, which were produced by the plaintiffs in a prior matter. Those documents unequivocally show that there was liquidation or termination. The cases which had been cited by plaintiffs' counsel were situations where the windup had not yet been completed, so the parties had not reached the termination stage. That's not the case here, based on the documents from the plaintiffs themselves. Thank you very much. Thank you, Mr. Burns. Good morning, Mr. Reddick. Good morning. I'm going to try to just touch on things that haven't been touched on. Can't you do that? Just try to be very brief. Griddell is very clear, and there's been nothing alleged that anything occurred since the time they received the notice of deficiency. Anything occurred, there was no touch between Deutsche Bank or David Pars and these plaintiffs. So for fraudulent concealment, they need an affirmative act. Silence is not enough, according to the Griddell case. They've not even alleged anything, and who would know better than the plaintiffs to say, hey, they called up, they did this, they did that. That did not occur. It hasn't been alleged to have occurred. For those reasons, there really can be no exception to Conn, Lane, and McMahon. With regards to just to clarify this transaction, the way it works is they form an LLC. The very first touch with Pars or Deutsche Bank was when the LLC was formed. That's the very first contact. So the individuals are not part of it. They've already formed and taken on corporate protection at that point. And you can't commingle your rights and protections under corporations. You can't commingle your assets. They can't say, we want this right and that. Once they did that, the corporation entered into the contracts. The corporation, if anything, would have any possible tort claims at that point. And then they transfer all of it over to a partnership. Mandatory in this partnership, basically how this works is they put a sum of money in and they have mirror trades. So one makes the same sum of money and one loses the same sum of money. When they wrap up the partnership, they're able to take the sum of money that they put in as their partnership contribution and then they're able to write off the loss side. So the money never disappears. That's how this whole thing worked in a very, very basic nutshell. Well, in order for that to work and take the loss, the partnership had to dissolve. Mandatory had to dissolve. It couldn't do anything otherwise. It couldn't go past that point. So just I think that's pretty much it that hasn't been touched on. If you have questions, I'm certainly. Well, that was quick. Thank you. It was good because they clarified something for me anyway. Yeah, I tried to simplify it. Thank you. Yeah, I needed it. So first I want to deal with the Kahn-Lane trial court somehow overruling what Kahn and Lane found. Obviously, they cited all these cases and we had all these arguments multiple times in front of the trial court. Her ruling in that regard in the order that is before you, either distinguishing those cases is there to be read. But Kahn did not need to consider, did not consider fraudulent concealment because it found that the plaintiff's claims were otherwise timely. They were filed within the period for the notice of deficiency. So the plaintiff, even though it had alleged fraudulent concealment, the Supreme Court didn't address it because it was moot. In Lane, you have a circumstance where one of the participants, the key fact that this court in Lane found dispositive was that one of the participants pled guilty. Different participants from those involved in this transaction. In Lane, Arnold and Courday, the lawyer who issued the legal opinion in the transaction, had pled guilty before the notice of deficiency ever arrived for the plaintiff, which the appellate court found to be a dispositive fact as to both knowing you have a claim and as to fraudulent concealment. And I would suggest the fact that that was a dispositive fact in Lane only supports our position here, which is that until Deutsche Bank pled guilty and it knew what it had done wrong in this transaction, the public record was, we didn't do anything wrong, we just didn't do any trades. And our clients put in affidavits that said that they didn't know what Deutsche Bank had just admitted to in the deferred prosecution or anything about it. Consciously, silence is not enough. There were no affirmative acts that they did. Right, and there are two responses to that, both of which the trial court considered. One, the public statements that are directed to the customers, to Congress, to agencies, are affirmative misrepresentations. They said, they put witnesses on in front of Congress who said all we did was implement trades. Then, seven years later, they admitted that they participated in a conspiracy to market and implement illegal tax shelters with a point-by-point admission about what they did wrong, how they violated promoter benefits, etc. And the complaint includes a claim for breach of fiduciary duty, which is an exception to the rule that counsel cited to. While it's generally true that fraudulent concealment cannot happen by way of just silence, if you have a duty to the client or customer or the plaintiff, then silence can be enough. The silence of not telling them what you now know to be true, which is that the transactions were economically baseless, they had no way to make any money off of the transactions, and all of those things which you've now discovered and admitted to the government are contrary to what you told the plaintiffs at the time. You have to come clean. And so those two facts, I would suggest, at the very least, put the defendants on notice of what the basis for allegations of fraudulent concealment are. That's what the pleading stage is supposed to be about. It's not supposed to be about resolving arguably disputed issues of fact because you think we can't come up with the evidence. You have to allow us to get the evidence, and then they can move for summary judgment if they think we haven't established fraudulent concealment. We've performed the evidence that we've been able to obtain thus far. I can tell you that the deferred prosecution agreement involved substantial exchanges between Deutsche Bank and the government that was going on for a long period of time before 2010, and yet they were still out there saying, we did nothing wrong, all we did was implement traits. It's not fair that they should be allowed to say that, put it out there, then wait seven years, enter into a deferred prosecution agreement that says the exact opposite. As to the other issue that was raised across a couple different arguments, the fees that were paid by the LLC, they say it was paid by the LLC. The LLC had no assets. It had no existence until the transaction came to play. The individual payers are who paid Deutsche Bank. But, yes, there's no... As he explained, they no longer had the money. The money was transferred. A loss was incurred. I understand. So you're double-talking there. No, what I want to say about that is the fees paid to Deutsche Bank are only one small component of the damages that are alleged in this case. The rest of the damages that are alleged, which are the fees paid to Jenkins and Gilchrist, the penalties and tax interest that the individual payers had to pay, and the cleanup costs... But isn't that all derivative? No, because the LLC did not pay the fees to Jenkins and Gilchrist. The penalties and interest that were imposed on the individual payers were imposed only on the individual payers. Not as a result of... No, not as a result. What matters is, did the payers only suffer injury by virtue of the penalties because of their involvement in the LLC? And the answer is, the reason why they had to pay penalties and interest is because of their individual tax returns. Not because of the LLC tax returns. Not because of the partnership tax returns. It's because they declared losses on their 1040s, just like we all submitted yesterday, and the IRS rejected them. The cleanup costs that they had to pay attorneys to extricate themselves from the transaction, those are not costs that were incurred by the LLC. The LLC's participation in this transaction is to execute the currency swap. By the way, is the LLC or was the LLC ever licensed to do business in Illinois? I think the answer to that is no. Does that have any impact on this suit at all? It's never been raised, if it does. I'm sorry? It's in the briefs. The fact that the LLC's, where the LLC's were entering into business, I think is a question that I don't know the answer to. The question was whether or not the LLC is licensed to do business. Right, and I'll just say that from their perspective, the LLC was doing business where the plaintiffs were, in the states of where they resided. There's an act that controls where an LLC may do business. Is there not? Yes. So ultimately, my point here is the LLC's don't get created at all if the individual plaintiffs are not induced into the transaction. This is not a case where we're claiming injury to the corporation. We are claiming injury to the individuals that happened by virtue of, in part, the currency swaps. That's why it's not like any of the cases of the other standing cases. Those are involving the customer list of the corporation or the corporate opportunity of the corporation. That's not this case. The individual plaintiffs are the ones who suffered the damages as a result of the transaction. Yes, there was a corporation involved. A lot of times that happens, just like in the Mann case, which he cited. I invest in a mutual fund. I say that there's a fraud. The individuals are the only ones who have been induced into that mutual fund. The mutual fund is a partnership. Is that derivative? No, according to Mann. It's the same case as us here. Thank you, Your Honors. Thank you, Mr. Estelle. Thank you, counsels, for your argument and your preparation this morning. The argument has been taken under advisement, and the disposition will be issued in due course.